Filed 2/24/25  P. v. Guevara CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LORENZO GUEVARA,<br><br>    Defendant and Appellant. | F086514<br><br>(Super. Ct. No. 17CMS-1626)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Clara M. Levers and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Lorenzo Guevara was convicted in 2020 of committing three offenses against his former wife, nine offenses against his stepdaughter, and five offenses against his daughter. He was sentenced to eight years, plus 210 years to life in prison. This second appeal arises from defendant having been resentenced to seven years, plus 190 years to life[1] on remand ordered by the Court of Appeal, First Appellate District, Division Four's opinion, which affirmed defendant's convictions, struck one of the jury's findings as to two counts, and vacated the upper term sentence as to one count as required by new legislation enacted after defendant's initial sentencing under Senate Bill No. 567 (2021–2022 Reg. Sess.).

Defendant contends his sentence must be vacated and the case remanded for resentencing. Defendant argues his sentence amounts to cruel and unusual punishment under the state and federal Constitutions. He also claims the trial court should exercise its discretion as to whether to impose concurrent or consecutive sentences on counts 14 and 16 for violations of Penal Code[2] section 288, subdivision (a). Defendant further

---

[1] The trial court's initial tentative ruling reflects a total term of six years, plus 190 years to life. This included a two-year term on count 15, which vacated the original upper term of four years on that count. The abstract of judgment also reflects a total term of six years, plus 190 years to life. On appeal, both defendant and the People erroneously rely on the court's tentative ruling and the abstract of judgment, indicating a term of six years, plus 190 years to life. The court thereafter orally pronounced judgment, vacated the upper term, and said the new term on count 15 for the attempted Penal Code former section 288a, subdivision (c)(1) is half the middle term, or three years. We note the court's oral pronouncement of a three-year term on count 15 is also in accordance with the law. (See §§ 287, subd. (c)(1) [the middle term punishment for oral copulation with another person who is under age 14 is six years], 664, subd. (a) [an attempted crime is punishable by one-half the term of imprisonment prescribed upon a conviction of the offense so attempted].) The three-year term on count 15 is also reflected in the minute order. We find the three-year term on count 15 in accordance with the court's true oral pronouncement of judgement. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385 [where there is a discrepancy between the oral pronouncement and the abstract of judgment, the oral pronouncement controls].) Therefore, as set forth below, we direct the trial court to amend the abstract of judgment to reflect the proper sentence, which is seven years, plus 190 years to life.

[2] Undesignated statutory references are to the Penal Code.

argues he was constructively denied his Sixth Amendment right to counsel at his resentencing hearing. We reject defendant's contentions, affirm the judgment, and direct the trial court to amend the abstract of judgment.

## PROCEDURAL BACKGROUND

On December 6, 2018, the Kings County District Attorney filed an information charging defendant with spousal rape (former § 262, subd. (a)(1); count 1), criminal threats (§ 422, subd. (a); counts 2, 5, 11), false imprisonment by violence (§ 236; count 3), forcible sodomy (§ 286, subd. (c)(2)(A); count 4), forcible lewd acts (§ 288, subd. (c)(1); counts 6, 10), forcible oral copulation of a minor over age 14 (former § 288a, subd. (c)(2)(C); count 7), forcible rape (§ 261, subd. (a)(2); counts 8, 12), forcible sodomy with a person over age 14 (§ 286, subd. (c)(2)(C); count 9), forcible sexual penetration of a child under age 14 (§ 289, subd. (a)(1)(B); count 13), lewd act on a child under age 14 (§ 288, subd. (a); counts 14, 16), attempted oral copulation of a person under age 14 (§ 664; former § 288a, subd. (c)(1); count 15), and forcible sodomy of a person under age 14 (§ 286, subd. (c)(2)(B); count 17). The information alleged defendant committed the offenses against more than one victim (§ 667.61, subds. (a), (e)(4)) and administered a controlled substance to Y.D. (§ 667.61, subds. (a), (e)(6)) as to all counts, and personally inflicted bodily harm on a person under age 14 (§ 667.61, subds. (a), (d)(7), (j)(1)) as to counts 15, 16, and 17.[3]

On February 27, 2020, a jury found defendant guilty on all 17 counts and found the special allegations true on all applicable counts except count 7, which the jury found the drug administration allegation not true.

---

[3] The multiple victim allegations (§ 667.61, subd. (e)(4)) were presented to the jury only in connection with counts 1, 4, 7, 8, 9, 12, 13, 14, 16 and 17; the drug administration allegations (§ 667.61, subd. (e)(6)) were presented to the jury in connection with counts 4, 7, 8, 9 and 12; and the bodily harm allegations (§ 667.61, subd. (d)(7)) were presented to the jury in connection with counts 16 and 17.

On March 26, 2020, the trial court sentenced defendant to eight years, plus 210 years to life as follows: consecutive terms of 25 years to life on counts 4, 8, 9, 12, 16, and 17; consecutive terms of 15 years to life on counts 1, 7, 13, and 14; the upper term of four years on count 15 to run consecutively; and consecutive eight-month terms (one-third middle terms) on counts 2, 3, 5, 6, 10, and 11.

On January 24, 2023, after defendant appealed his conviction and sentence, the First District Court of Appeal affirmed defendant's convictions but remanded for resentencing. (*People v. Guevara* (Jan. 24, 2023, A165852) [nonpub. opn.].)

On May 30, 2023, the trial court held a resentencing hearing and followed the opinion from the First District Court of Appeal. The court struck the section 667.61 allegations on counts 4 and 12, imposed the middle term on count 15, and otherwise reaffirmed defendant's sentence in its entirety.

The trial court resentenced defendant to seven years, plus 190 years to life as follows: consecutive terms of 25 years to life on counts 8, 9, 16, and 17; consecutive terms of 15 years to life on counts 1, 4, 7, 12, 13, and 14; a consecutive term of three years (the middle term) on count 15; and consecutive eight-month terms (one-third middle terms) on counts 2, 3, 5, 6, 10, and 11.[4]

## FACTUAL BACKGROUND

L.D. and defendant were husband and wife; they were married in about 2005 in Mexico. At the time they married, L.D. had a daughter, Y.D. who was about four years old. Y.D. is defendant's stepdaughter.

---

[4] At resentencing, the trial court struck one of the jury's findings under section 667.61, subdivision (e)(6) on counts 4 and 12, decreasing the terms on those counts to consecutive terms of 15 years to life. The court also vacated the upper term sentence on count 15 and imposed the middle term of three years.

In 2007, L.D. moved to the United States with defendant. When they first moved, they settled in Riverside. Y.D. did not move with them, she stayed with her grandparents in Mexico.

In 2008, L.D. and defendant had a daughter together, D.G.

In 2010, L.D., D.G., and defendant moved to Avenal. Y.D. did not move to Avenal until 2017.

## I.     Offenses Against L.D.

There were approximately six times when defendant forced L.D. to have sex with him. On these occasions, defendant grabbed her hands by force, turned her face down and put his penis in her anus, causing her to bleed. This happened twice in Riverside (once right after D.G. was born) and four times in Avenal (in two different houses). L.D. did not report the rapes. L.D. told defendant that she had wanted a divorce since 2008, but defendant threatened to kill her if she left. L.D. said she stayed with defendant after he raped her "[b]ecause of [her] children."

Defendant did not want L.D. to go outside of the house. To prevent her from leaving, all the windows of the house were bolted and the front door had a lock that could only be opened from the outside. Defendant locked L.D. and the children in the house when he went to work on two occasions.

In 2017, a few weeks before L.D. called the police, she came home early and saw defendant with drugs in the girls' bedroom.

## II.     Offenses Against Y.D.

Prior to June 2017, defendant cared for the children while L.D. was at work from 6:00 p.m. until 6:00 a.m. One day, in June 2017, Y.D. appeared scared and asked L.D. not to go to work. She told L.D. defendant was abusing her. Y.D. showed L.D. a "glass of bullets" and told L.D. defendant gave them to Y.D. L.D. called the police.

Y.D. was 18 years old at the time of trial. She was 14 years old when she moved to Avenal to live with defendant and L.D. A couple of weeks after she moved to Avenal,

5.

defendant came into Y.D.'s room while she was sleeping and touched her vagina and other parts of her body. He touched her vagina and anus with his penis more than 30 times while she lived with him. Her vagina and anus bled when defendant raped her, and her anus hurt so that she "could [not] … sit down."

On the first occasion in Avenal, defendant "got some drugs" and gave them to Y.D. so that she would have sex with him. Defendant came into her bedroom and gave her cocaine and "crystal."

Defendant forced Y.D. to take the drugs and have sex with him by threatening her with a gun. Y.D. described the gun as a silver revolver with a wood handle and identified the gun found by the police as the one defendant threatened her with. Y.D. took the bullets away one time when defendant was "drunk and drugged."

Y.D. described another time when defendant put pornography on the television, grabbed her, and said he wanted to have sexual relations with her. When she said "no," defendant grabbed her by force, pulled down her pants and his own, and put his penis in her vagina and in her anus. This incident occurred in Y.D.'s bedroom.[5] She bled from her vagina and anus.

Y.D. described another occasion in her bedroom when she had taken drugs and defendant grabbed her by force, put his penis in her vagina and in her anus, ejaculated in her vagina, and touched her breasts and her vagina with his hands. Defendant also ejaculated on the carpet in Y.D.'s bedroom.

The day of defendant's arrest, defendant got into the shower with Y.D. Defendant grabbed her hands and "put his penis in [her] vagina by force" as she tried to push him

---

[5] Asked where it occurred, Y.D. responded, "In my room." When the prosecutor asked further questions about the event occurring in the "living room," Y.D. accepted the characterization of the incident and did not say anything about the reference to it having occurred in the living room rather than in her own room.

away. He also touched her breasts, started to put his penis in her anus, and touched her vagina with his hands and mouth.

Defendant told Y.D. that he abused her in Mexico when she was five years old. She remembered he grabbed her by her hair, placed her mouth on his penis, and forced her to "suck his penis."

### III. Offenses Against D.G.

L.D. saw defendant touch D.G.'s anus when she was about six years old. Defendant was holding D.G.'s feet up with one hand while his other hand was on her "butt" with his finger in her anus. Defendant told L.D. he was only cleaning D.G.

D.G. was 11 years old at the time of trial. D.G. was nine years old when the police came to her house in Avenal. On one occasion prior to the police arriving, D.G. fell asleep on the couch and woke up to her pants down and defendant kissing her on the mouth. She tried to push defendant away and went to her room.

Another time, while D.G. and defendant were alone in the living room together, defendant pulled his pants down, pushed D.G.'s head toward his "privates," and tried to make her put his "privates" in her mouth. D.G. turned her head, and defendant's "private part" hit her cheek. She ran away.

On another occasion, when D.G. was sitting on defendant's bed counting coins, defendant came from behind and put his "private part" inside her "butt." D.G. said it "hurt" and her anus was bloody after the incident.

Another time, while D.G. was in the living room trying to fix the television, defendant came from behind and got on top of her with his pants off. She could feel his "private part" on her "bottom" over her clothes. She kicked him and went to her room.

### IV. Defendant's Statements

In an interview with Sergeant Kevin Carr at the police station, defendant denied any wrongdoing. He denied ever doing anything to hurt his family and said he had a caring relationship with his children and he protects them. He initially denied owning a

gun, however, he admitted owning one when the police told him they found one in his home. Defendant said the locks on the doors were because Y.D. walked in her sleep.

Carr told defendant about the suspected DNA evidence on the carpet. Defendant said he masturbated in Y.D.'s room. When asked further, he said he masturbated and Y.D. saw him doing it. Then, he said he had been having consensual sex with Y.D. since she moved into his house. He also admitted to having anal sex with her. He maintained the sex was consensual and denied ever threatening Y.D. When asked why Y.D. was scared of him, defendant told Carr, "I deserve it, I need help." After initially stating that his sexual relationship with L.D. was also consensual, defendant later admitted he forced L.D. to have sex with him about four years before.

Defendant first denied ever touching D.G. Then, defendant said he touched D.G.'s vagina with his hand. Carr asked if he penetrated D.G., and defendant said he did, but he "did [not] tear anything." Defendant said he touched D.G. two times and did it to "make himself feel good in that moment." He said the girls performed oral copulation on him. Defendant told Carr that Y.D. wanted to do it and D.G. "did [not] say yes, but she also did [not] say no." He said he would give D.G. money for the oral copulation. Carr asked whether defendant thought an eight-year-old would want to have sex, and defendant said he thought D.G. wanted to because he would pay her.

V.     **Physical Evidence**

Police officers who responded to defendant's house observed that the lock on the front door was on "backwards." The back door had a padlock that prevented the door from being opened. There were nails in the window frames so the windows could not be opened.

A search of the house revealed a .38-caliber firearm, ammunition, and methamphetamine. In Y.D.'s bedroom, there was the presence of semen containing the same DNA makeup as defendant.

Analysis of a swab taken from Y.D.'s right breast during a sexual assault exam showed defendant to be the major contributor and Y.D. the minor contributor.

## DISCUSSION

**I.    Defendant's Sentence Does Not Constitute Cruel and/or Unusual Punishment**

Defendant contends his sentence is so disproportionate to his convictions that it violates the state Constitution's prohibition on cruel or unusual punishment (Cal. Const., art. I, § 17) and the federal Constitution's prohibition on cruel and unusual punishment. (U.S. Const., 8th Amend.)  The People disagree.  We agree with the People.

**A. Additional Background**

At defendant's resentencing hearing, the trial court stated its reasons for imposing the sentence as follows:

> "[A]s to [c]ounts 4 and 12 the appellate court struck the [section] 667.61 allegation for the use of an intoxicant …, which that in combination with multiple victims imposed a 25-[year-]to-life sentence.  It appears to me the multiple victim[s] is still present, so without those it would be 15[ years to ]life on each of those counts instead of 25 [years].  And on [c]ount 15 it … become[s] the middle term….

> "[¶] … [¶]

> "[T]he [c]ourt will follow the direction of the Court of Appeal[].  As to [c]ounts 4 and 12 the allegation under [section] 667.61 for use of an intoxicant is stricken ….   There is still a finding of both of those counts of multiple victims, those will both be reduced from the 25[ years to ]life that was imposed to 15[ years to ]life.

> "As to the attempted [section] 288 in [c]ount 15 … the upper term will be stricken, and it will be the middle term … it is an attempt [so] it is a half … that is a three-year term instead of the four-year term the [c]ourt [previously] imposed.  Otherwise[,] the [c]ourt will reaffirm the sentence in its entirety.

> "[¶] … [¶]

"[Defendant] will have six sentences at 15[ years to ]life consecutive to each other. Four terms at 25[ years to ]life consecutive to each other. And then [defendant] will have the additional three-year term on the attempted [former section 288a] [count 15]. And then there is a number of … circumstance counts that are one-third the mid term at eight months each."

There was no objection by either party to the sentence the trial court imposed.

About one month after defendant's resentencing hearing, defendant wrote a letter in propria persona requesting that he be given a "release date" because he did not "kill anyone" and asked for forgiveness.

## B. Forfeiture

Before turning to the merits of defendant's challenge, we must decide whether the issue is preserved on appeal. Defendant argues that although his counsel did not object to his sentence as cruel and/or unusual, the issue is cognizable on appeal because his letter, written about one month after the sentencing hearing, should be construed as an objection. In the alternative, he claims he received ineffective assistance when his counsel failed to object.

Generally, "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356; see also *People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1311 [favoring contemporaneous objection to statement of reasons].) "A claim that a sentence is cruel or unusual requires a 'fact specific' inquiry and is forfeited if not raised below." (*People v. Baker* (2018) 20 Cal.App.5th 711, 720; see also *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.) Defense counsel failed to object or otherwise raise the issue below that defendant's sentence constituted cruel and/or unusual punishment under either the state or federal Constitutions. Defendant has forfeited his claim.[6]

---

[6] We also reject defendant's claim that his letter, raising general concerns about his "release date" and filed one month after the sentencing hearing, constituted a valid objection.

Assuming the issue is forfeited, defendant claims his counsel was prejudicially ineffective for failing to object. We reject his contention but will address the merits to show defense counsel was not ineffective by failing to make a "futile or meritless objection." (See *People v. Reyes* (2016) 246 Cal.App.4th 62, 86.)

**C. Defendant Fails to Establish Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, defendant must establish both deficient performance and prejudice, that is, "a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.) Tactical errors are generally not deemed reversible, and counsel's decisions are evaluated in the context of the record. (See *Strickland v. Washington* (1984) 466 U.S. 668, 689 (*Strickland*).)

The reviewing court must determine whether the record contains an explanation for the challenged conduct. (*People v. Pope* (1979) 23 Cal.3d 412, 425, overruling recognized on another ground in *People v. Delgado* (2017) 2 Cal.5th 544, 559.) If the record sheds light on why counsel acted or failed to act in the manner challenged, the conviction will be affirmed if counsel's acts or omissions resulted from an informed tactical choice within the range of reasonable competence. (See *People v. Fain* (1969) 70 Cal.2d 588, 600.) However, in some cases, the record on appeal is silent regarding why counsel acted or failed to act in the manner challenged. These cases are affirmed on appeal "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." (*Pope*, at p. 426.) An assertion that counsel was ineffective on a silent record is more appropriately made in a petition for

---

(See, e.g., *People v. Mustafaa, supra*, 22 Cal.App.4th at p. 1311; see also *People v. de Soto* (1997) 54 Cal.App.4th 1, 8 [a defendant must raise "sufficiently specific objections" at the time of sentencing or waive his right to claim any sentencing errors on appeal].)

habeas corpus, which promotes judicial economy.[7]  (*People v. Dickey* (2005) 35 Cal.4th 884, 926; see also *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

With these principles in mind, we turn to whether defendant received ineffective assistance for defense counsel's failure to object on the grounds that defendant's sentence constituted cruel and/or unusual punishment.  There is nothing in the record that shows the reason defense counsel did not object.  The First District Court of Appeal affirmed defendant's convictions, struck one of the jury's findings, and remanded for resentencing in light of recently enacted legislation that occurred after defendant was initially sentenced.  The same judge who presided over defendant's trial and at the initial sentencing hearing also conducted defendant's resentencing hearing.  The court imposed a lesser sentence at the resentencing hearing.  It is reasonable to conclude defense counsel, acting as a diligent advocate, made a tactical decision not to object to a more favorable sentence than what was previously imposed at defendant's initial sentencing.  Because there was no basis for objection, trial counsel was not remiss in failing to object to defendant's sentence.  (See, e.g., *People v. Weaver* (2001) 26 Cal.4th 876, 931.)

However, even if defendant demonstrated his counsel's performance was deficient, remand is not required unless it is reasonably probable that a different result would have occurred in the absence of error.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  As we will show, defendant fails to demonstrate prejudice.  (See *People v. King* (1993) 16 Cal.App.4th 567, 572 [it is a defendant's burden to prove that the punishment prescribed for an offense is unconstitutional].)

## 1. The California Constitution

The California Constitution prohibits infliction of "[c]ruel or unusual punishment."  (Cal. Const., art. I, § 17.)  The punishment violates the California

---

[7]     A habeas corpus proceeding provides an evidentiary hearing and allows trial counsel the opportunity to set forth his or her reasons for acting or failing to act in the manner challenged. (See §§ 1483, 1484; *People v. Pope, supra*, 23 Cal.3d at p. 426.)

constitutional prohibition on cruel or unusual punishment if, "although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) A defendant must overcome a "considerable burden" in challenging a punishment as cruel or unusual under the California Constitution. (*People v. Wingo* (1975) 14 Cal.3d 169, 174.) Whether a punishment is cruel and/or unusual is a question of law subject to our independent review. (*People v. Abundio* (2013) 221 Cal.App.4th 1211, 1217.)

To determine whether a particular punishment is disproportionate to the offense for which it is imposed, a three-part test is used. The first part of the test examines "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*In re Lynch, supra*, 8 Cal.3d at p. 425.) Second, the punishment imposed is compared to punishments prescribed by California for more serious offenses. (*Id.* at pp. 426–427.) Last, the challenged punishment is compared with punishment for the same offense in other jurisdictions. (*Id.* at pp. 427–429.) We consider the "totality of the circumstances" surrounding the commission of the offense, including the defendant's motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of the defendant's acts. (*People v. Romero* (2002) 99 Cal.App.4th 1418, 1431.)

We turn to the first part of the *In re Lynch* test, under which the nature of the offense and the offender is considered. (*In re Lynch, supra*, 8 Cal.3d at p. 425.) Here, defendant's offenses are particularly horrific. The circumstances of the present offenses include multiple serious and violent sexual crimes to multiple victims who were defendant's family members. The nature of the offenses against Y.D., a minor, consisted of forcible sodomy, rape, forcible oral copulation, criminal threats, and lewd acts. The nature of the offenses against D.G., his daughter who was under age 14 at the time the offenses were committed, included forcible sexual penetration, lewd acts, forcible

sodomy, and attempted oral copulation. Defendant also raped his former wife. During the commission of these offenses, defendant was directly involved and intended the results; he was able to appreciate the nature of his actions and their foreseeable consequences. (Cf. *People v. Dillon* (1983) 34 Cal.3d 441, 451, 488 (plur. opn. of Mosk, J.) [our Supreme Court found the defendant's life sentence for felony murder at age 17 to be cruel and unusual because of the defendant's immaturity, state of mind, and the fact that he did not foresee the risk he was creating nor was able to extricate himself from it without panicking].)

Several counts included offenses listed under section 667.61. "Section 667.61 mandates indeterminate sentences of 15 or 25 years to life for specified sex offenses that are committed under one or more 'aggravating circumstances .…' " (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 186.) In *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1277–1282, the Second District Court of Appeal concluded the defendant's sentence of 25 years to life under section 667.61 for committing a first degree burglary with the intent to commit the forcible rape was not cruel or unusual punishment under the California Constitution. (Accord, *People v. Crooks* (1997) 55 Cal.App.4th 797, 803–809.) "The purpose of the One Strike law is 'to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction,' 'where the nature or method of the sex offense "place[d] the victim in a position of *elevated vulnerability*." ' " (*Alvarado*, at p. 186.) Considering the facts of our case and the Legislature's decision to increase punishment for offenses listed under section 667.61, defendant's contention of disproportionality is without merit.

Defendant relies heavily on the first part of the *In re Lynch* test, and highlights mitigating circumstances, such as facts that he was employed, had no prior convictions, and suffered from drug and alcohol abuse. Defendant cites *People v. Avila* (2020) 57 Cal.App.5th 1134, 1149, stressing his alcohol and drug abuse should be a factor we should consider when determining whether his punishment was cruel or unusual. We

agree a defendant's drug or alcohol addiction may be considered a mitigating circumstance when imposing a sentence. (See Cal. Rules of Court, rule 4.423(b)(2) [a factor relating to the defendant includes whether the defendant suffered from a mental or physical condition that significantly reduced his culpability for the crime]; *People v. Simpson* (1979) 90 Cal.App.3d 919, 927–928; *People v. Jordan* (1986) 42 Cal.3d 308, 316.) However, there is no support for the conclusion that a defendant's life sentence should be deemed cruel or unusual punishment *because* of the defendant's drug addiction. (See *Avila*, at p. 1149, fn. 15; *Simpson*, at pp. 927–928; *Jordan*, at p. 316.) In *People v. Alvarado, supra*, 87 Cal.App.4th at pages 199–200, while the defendant suffered from substance abuse, the court nevertheless rejected the defendant's claim that his sentence was cruel or unusual. The Sixth District Court of Appeal reasoned: "[T]he callous and opportunistic nature of [the defendant's] sexual assault against a neighbor he knew to be particularly vulnerable seems to us precisely the sort of sexual offense that warrants harsh punishment." (*Id.* at p. 200.) We agree with the *Alvarado* court's reasoning and apply it here.

Moreover, there is nothing in the record that shows defendant abused drugs or alcohol.[8] While defendant used drugs to perpetrate the crimes in this case, specifically the rape of Y.D., there is no evidence that defendant was addicted to drugs or alcohol or that the drugs or alcohol significantly reduced defendant's culpability for the crimes.

Turning to the second part of the *In re Lynch* test, which compares the challenged punishment with punishment prescribed for more serious crimes in the same jurisdiction (*In re Lynch, supra*, 8 Cal.3d at p. 426), defendant does not fare any better. Defendant argues his sentence is harsher than sentences imposed in California for any type of

---

[8] There is also nothing in the probation report showing defendant suffered from drug or alcohol abuse. The probation report states defendant consumed "two to three beers on the weekends" prior to his arrest. Although defendant experimented with cocaine, he reported he last used the drug in approximately 2000. He experimented with marijuana on a single occasion at age 14.

unlawful killing, such as second degree murder and involuntary manslaughter. However, "the Legislature has made offenses not involving homicide punishable by life imprisonment without the possibility of parole, and such sentences are not cruel or unusual in view of the fact that they involve an 'inherent danger to the life of the victim … even if no death occurs.' " (*People v. Reyes, supra*, 246 Cal.App.4th at p. 88 [the defendant's life sentence without the possibility of parole for oral copulation, forcible rape, lewd acts upon a child under age 14, and first-degree burglary was not disproportionate under either the California Constitution or the Eighth Amendment].)

The Second District Court of Appeal also came to a similar conclusion and reasoned: "[A] defendant who commits both forcible rape and residential burglary … [compared] to a defendant who commits an unpremeditated murder ignores the fact the first defendant committed two offenses, not just one, and committed the burglary for the purpose of committing the rape. [Citation.] The penalty for a single offense cannot be properly compared to the penalty for multiple offenses especially where one offense was committed in order to commit the other." (*People v. Estrada, supra*, 57 Cal.App.4th at p. 1282.)

Here, defendant fails to appreciate that he was sentenced on 17 counts, many of which consisted of violent sex crimes against three family members, one of whom is his own child. This is not a case involving a single, isolated crime. Defendant repeatedly assaulted his victims and kept them in fear with threats of personal harm. A defendant convicted of multiple sex crimes has been consistently labeled as one of " 'the most dangerous' from a legislative standpoint." (*People v. Wutzke* (2002) 28 Cal.4th 923, 930–931; see also *People v. DeSimone* (1998) 62 Cal.App.4th 693, 698 [§ 667.61 intended to impose a separate life term on a defendant convicted thereunder].) Defendant's sentence it is not so disproportionate as to shock the conscious and offend fundamental notions of human dignity, and thus not constitutionally infirm. (See, e.g., *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230–1231 [a term of 135 years to life was not cruel or unusual

punishment for a defendant who committed multiple sex offenses against four children];
*People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 531–532 [upholding sentence of 129 years for a defendant convicted of multiple sex offenses].)

Turning to the final part of the *In re Lynch* test, defendant fails to compare his sentence with punishments in other states for the same offense. (*In re Lynch, supra*, 8 Cal.3d at p. 427.) We take this as a concession that his sentence withstands constitutional challenge on that basis. (See *People v. Crooks, supra*, 55 Cal.App.4th at p. 808 [defendant bears burden of establishing disproportionality].) Nevertheless, in *Edwards v. Butler* (5th Cir. 1989) 882 F.2d 160, 166–167, the Fifth Circuit held a sentence of life imprisonment without parole for aggravated rape under the Louisiana statute did not offend Eighth Amendment proportionality analysis, since the offense was "extremely serious" (*Edwards*, at p. 166) and the defendant's "sentence of life without parole is not greater than the sentence the Louisiana legislature has mandated for crimes involving a comparable or lesser degree of violence" (*id.* at p. 167).

Defendant's sentence is not so disproportionate or obviously excessive to warrant a finding of cruel or unusual punishment under the California Constitution.

## 2. The United States Constitution

The Eighth Amendment to the United States Constitution applies to the states and prohibits cruel and unusual punishment. (U.S. Const., 8th Amend.; *People v. Caballero* (2012) 55 Cal.4th 262, 265.) The appropriate standard for determining whether a particular sentence violates the Eighth Amendment is gross disproportionality. (*Ewing v. California* (2003) 538 U.S. 11, 21.) Successful challenges to proportionality are extremely rare. (*Rummel v. Estelle* (1980) 445 U.S. 263, 265–266, 272 [a life sentence for credit card fraud of $80, passing a $28.36 forged check, and obtaining $120.75 by false pretenses was not grossly disproportionate in violation of the Eighth Amendment]; *Harmelin v. Michigan* (1991) 501 U.S. 957, 994–996 [a life sentence without parole for possessing a large quantity of drugs did not surpass constitutional bounds].) Similarly,

the standard for what constitutes cruel and unusual punishment is extremely rigorous. (*Lockyer v. Andrade* (2003) 538 U.S. 63, 66, 69 [two consecutive 25-year-to-life sentences imposed for two thefts of items worth less than $155 is not cruel or unusual].) These cases demonstrate the very narrowness of the Eighth Amendment's disproportionality rule.

The parties agree, as do we, there was nothing passive or nonviolent about defendant's conduct in this case. Looking to the gravity of defendant's offenses and comparing them to his life sentence, we do not believe that the comparison gives rise to an inference of gross disproportionality. In *Solem v. Helm* (1983) 463 U.S. 277, a case cited by defendant, the court invalidated the defendant's life sentence due to the nonviolent, passive nature of the defendant's fraudulent check writing. (*Id.* at p. 296.) However, the court recognized that a life sentence for violent criminals, including those who committed rape, would pass constitutional muster. (*Id.* at pp. 297–299.)

Defendant cites *Ramirez v. Castro* (9th Cir. 2004) 365 F.3d 755, to support his argument that his sentence is grossly disproportionate to other sentences imposed in California. There, the court held that the defendant's 25-year-to-life sentence for his third shoplifting offense was grossly disproportionate to the to the crime he committed. (*Id.* at p. 767.) The court focused on the gravity of the defendant's current offense, a nonviolent petty theft, and his two other prior nonviolent robbery convictions, and concluded that a life sentence was cruel and unusual punishment given the defendant did not threaten to cause "grave harm to society," and his prior criminal history was considerably less serious than that of other recidivists. (*Id.* at pp. 768–769.) Defendant also cites *Gonzalez v. Duncan* (9th Cir. 2008) 551 F.3d 875, where the court concluded a 28-year-to-life sentence for the defendant's failure to update his annual sex offender registration was cruel and unusual punishment and grossly disproportionate due to the " 'entirely passive, harmless, and technical violation of the [sex] registration law.' " (*Id.* at p. 889.)

The facts in the *Ramirez* and *Gonzalez* cases are vastly different from those here. While we acknowledge defendant is not a recidivist, given the nature, the number of offenses, and the number of victims, the fact that defendant is a first-time offender does not change our analysis. It is not so disproportionate for a person who engages in multiple heinous sex crimes with a pattern of preying on vulnerable family members over a long period of time to receive a longer sentence than an entirely passive, harmless, and nonviolent offender. (See *Gonzalez v. Duncan, supra*, 551 F.3d at p. 889.) Moreover, given the United States Supreme Court has upheld life sentences for minor, nonviolent property crimes, it follows that defendant's life sentence for 17 counts of sexually violent offenses against multiple victims does not violate the federal Constitution.

It is not reasonably probable that a sentence more favorable to defendant would have been imposed if defense counsel objected to the imposition of defendant's sentence on the grounds that it was cruel and/or unusual. (See *People v. Watson, supra*, 46 Cal.2d at p. 836.) Defendant has failed to demonstrate the necessary prejudice to support his claim of ineffective assistance of counsel.

## II. Consecutive Sentences are Appropriate on Counts 14 and 16

Defendant argues the record is not clear as to whether the trial court understood its discretion when it imposed consecutive rather than concurrent sentences on counts 14 and 16. Defendant asks us to remand for resentencing. The People maintain the court understood its discretion and rightly imposed consecutive sentences. We agree with the People.

### A. Additional Background

The probation report, which the trial court indicated it had read, recommended each count be served consecutively because "[t]he crimes in relation to each count involve separate acts of violence, as well as independent objectives, and happened over a

period of time ….."[9] (See Cal. Rules of Court, rule 4.425(a)(1), (3).) The probation report also stated that counts 14 and 16 were not subject to mandatory consecutive sentences under section 667.6, subdivision (d), but left to the court's discretion as to whether to impose consecutive or concurrent sentences on those counts.

At the most recent hearing, the trial court addressed the issues raised in the opinion of the appellate court. The court set forth its reasons for reducing the total term on defendant's sentence and then said, "Otherwise, the [c]ourt will reaffirm the sentence in its entirety." The court did not discuss its reasons for imposing consecutive sentences on counts 14 and 16.

## B. Forfeiture

Our Supreme Court has held that a defendant cannot complain for the first time on appeal about the trial court's failure to state reasons for a sentencing choice. (*People v. Scott, supra*, 9 Cal.4th at pp. 352–353 [the trial court's failure to properly make or articulate its discretionary sentencing choices are forfeited on appeal for failure to object below].) Here, the trial court did not state its reasons for imposing consecutive rather than concurrent sentences on counts 14 and 16. However, the reason appears to be because the court was not asked to make such a finding. "[A] party cannot argue on appeal that the trial court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Fruits* (2016) 247 Cal.App.4th 188, 208.) Defendant forfeited his claim.

However, we exercise our discretion to reach the merits of defendant's contention to forestall the claim of ineffective assistance of counsel. (*People v. Crittenden* (1994)

---

[9]    At the initial sentencing hearing, the trial court said it read the probation report and further noted it was adopting the recommendation set forth in the probation report and sentenced defendant to consecutive sentences on counts 14 and 16. The same judge who handled the initial sentencing also conducted defendant's resentencing hearing.

9 Cal.4th 83, 146 [reviewing court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments].)

## C. Merits

A trial court's decision whether to impose consecutive or concurrent sentences under section 667.61 for multiple violations of section 288, subdivision (a) is discretionary under section 669.  (*People v. Valdez* (2011) 193 Cal.App.4th 1515, 1524; *People v. Shaw* (2004) 122 Cal.App.4th 453, 458 ["[s]ection 669 grants the trial court broad discretion to impose consecutive sentences when a person is convicted of two or more crimes"].)  The sentencing rules specify criteria to guide the trial court's determination as to whether to impose consecutive or concurrent terms.  In this case, the probation report set forth two criteria which are applicable:  the "crimes and their objectives were predominantly independent of each other"; and the "crimes were committed at different times or separate places."  (Cal. Rules of Court, rule 4.425(a)(1), (3).)

Defendant claims the trial court failed to recognize it had discretion in deciding whether to impose consecutive sentences, but rather assumed consecutive sentences applied under section 667.61.[10]  However, there is nothing to indicate the court did not understand its discretion.  Instead, the probation report, which the court indicated it read, specifically noted that consecutive sentences on counts 14 and 16 were *not* mandatory and further stated the court should exercise its discretion as whether to impose concurrent or consecutive sentences on those counts.

A trial court is presumed to be aware of its sentencing discretion.  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.)  In the face of a silent record, we will not infer the court was unaware of its sentencing discretion.  (*People v. Carmony* (2004) 33 Cal.4th

---

[10]     Section 667.61 mandates consecutive sentences for certain enumerated sex offenses listed in subdivision (c)(1) to (7) not applicable to counts 14 and 16.

367, 378; *People v. Weddington* (2016) 246 Cal.App.4th 468, 492 ["On appeal, we presume that the trial court followed established law and thus properly exercised its discretion in sentencing a criminal defendant."].) Defendant has failed to carry his burden of affirmatively demonstrating error. (See *People v. Davis* (1996) 50 Cal.App.4th 168, 172.)

We conclude the record does not support defendant's contention that the court misunderstood its discretion. Thus, even if defendant did not forfeit his claim, it fails on the merits.

## III. Defendant Fails to Show He Was Constructively Denied His Sixth Amendment Right to Counsel

Defendant argues he was constructively denied his Sixth Amendment right to counsel due to defense counsel's inaction at the resentencing hearing, and claims he is entitled to reversal without showing prejudice. The People disagree, maintaining defendant was represented at the resentencing hearing and not constructively denied the right to counsel. We agree with the People.

### A. Additional Background

The trial court discussed the purpose of the resentencing hearing:

> "[This case] is here … on a remittitur from the … Court of Appeal[], which struck a few findings, but then also indicated resentencing needed to take place on … [c]ount 15 as the [c]ourt [previously] imposed an upper term, which is no longer authorized absent the finding of specific aggravating factors. But it seems to suggest the People could have a jury trial on that issue .…"

The prosecutor decided not to proceed to trial on the aggravating factors and accepted the sentence set forth by the trial court in conformity with the appellate court's decision. Defense counsel also accepted the sentence and "[s]ubmitted." There was no oral argument offered by either the prosecutor or defense counsel at the resentencing hearing prior to the court imposing defendant's sentence.

22.

## B. Assistance of Counsel

Under the Sixth Amendment, a criminal defendant has the right to the assistance of counsel. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) The right to counsel is the right to the effective assistance of counsel. (*Strickland v. Washington, supra*, 466 U.S. at p. 686.) This right applies at all " 'critical stages' " of a criminal proceeding in which the substantial rights of a defendant are at stake, including sentencing. (*People v. Bauer* (2012) 212 Cal.App.4th 150, 155.)

Defendant claims his case falls into the narrow holding set forth in *United States v. Cronic* (1984) 466 U.S. 648 (*Cronic*), even though he was represented at the resentencing hearing. Defendant claims prejudice must be presumed because his counsel's conduct was so egregious it amounted to a complete denial of counsel within *Cronic*'s meaning.

In *Cronic*, the United States Supreme Court considered whether the appellate court properly reversed the defendant's conviction based on the conclusion that the defendant was deprived of the right to counsel for his defense guaranteed by the Sixth Amendment. (*Chronic, supra*, 466 U.S. at p. 650.) The court focused its analysis not on whether the defendant's counsel made any specified errors or that his performance prejudiced the defense, rather, it considered whether there could be a Sixth Amendment violation if the assistance of counsel was totally absent. (*Ibid.*) The Supreme Court found prejudice presumed when the defendant is denied the presence of counsel at a "critical stage" of his trial. (*Id.* at p. 659.) Similarly, prejudice is presumed when counsel failed "to subject the prosecution's case to meaningful adversarial testing." (*Ibid.*) Thus, *Cronic* "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." (*Id.* at p. 659, fn. 25.)

In *Bell v. Cone* (2002) 535 U.S. 685, the United States Supreme Court grappled with the issue of whether the principles articulated in *Cronic* applied to the defendant's counsel, where prejudice is presumed in limited circumstances, or whether a showing of

23.

prejudice must be made under *Strickland*. (*Id.* at pp. 694–695.) There, the defendant's counsel waived closing argument and did not present mitigating evidence during the sentencing phase. (*Id.* at p. 692.) After the defendant was convicted of first degree murder and sentenced to death, he petitioned for relief arguing the standard set forth in *Cronic* should apply. (*Ibid.*) The court disagreed that the defendant's case fell within the meaning of *Cronic*, reasoning that the "attorney's failure must be complete" for the presumption of prejudice to apply. (*Id.* at p. 697.) The court held that *Strickland* should be used because the defendant's counsel's failure to "adduce mitigating evidence" and his decision to waive closing argument were "specific attorney errors" that were "subject to *Strickland*'s performance and prejudice components." (*Id.* at pp. 697–698.)

Relying on *Cronic*, the defendant in *In re Avena* (1996) 12 Cal.4th 694, claimed he was entitled to reversal without having to show prejudice due to the "minimal nature" of his counsel's representation. (*Id.* at p. 726.) Defense counsel "waived opening argument at the guilt phase, called no defense witnesses, and did not address either the two murders or the two special circumstance allegations in a brief closing argument." (*Id.* at p. 727.) Our high court reasoned that defense counsel's representation was "minimal at best." (*Ibid.*) However, the court found the defendant's case fell "outside the small exception carved out by *Cronic*" (*id.* at p. 728) because counsel was neither " 'totally absent' " nor " 'prevented' " by outside influences, or anything else, from assisting the defendant at trial (*id.* at p. 727).

Relying on these authorities, we are not persuaded that defendant's case falls within *Cronic*'s narrow exception. Here, defendant was not totally deprived of counsel at his resentencing hearing. Like the attorneys in *Bell v. Cone* and *In re Avena*, defense counsel did not completely fail to render meaningful assistance, counsel was not "totally absent," nor was this a situation where even competent counsel could not, or was prevented from, assisting defendant at the hearing. (See *Bell v. Cone, supra*, 535 U.S. at p. 697; *In re Avena, supra*, 12 Cal.4th at pp. 727–728.)

While defense counsel did not make any arguments at the hearing, we cannot conclude his decision was not tactical. The prosecutor also did not make any arguments. The trial court explained the reasons for resentencing defendant. The prosecutor indicated he accepted the sentence as directed by the appellate court and did not want to proceed to a trial on the aggravating factors. Defense counsel also accepted the decision and "[s]ubmitted." The court's sentence resolved both issues in defendant's favor and decreased his total term. On this record, defendant was not constructively denied the assistance of counsel based on defense counsel's failure to offer any additional arguments at the hearing.

Defendant also points out that defense counsel failed to offer mitigating evidence, did not obtain an updated probation report, or object to defendant's disproportionate sentence.[11] However, defendant fails to demonstrate he suffered any prejudice. The record shows the court was aware of defendant's only mitigating circumstance, the fact that he did not have a prior record. Moreover, since defendant was continuously incarcerated from the time of his initial sentencing to his resentencing hearing, defense counsel could have reasonably inferred that defendant knowingly waived a supplemental probation report because he knew it would not benefit him. (See, e.g., *People v. Johnson* (1999) 70 Cal.App.4th 1429, 1433.)

There is no evidence that defense counsel was absent, unprepared to represent defendant, or that his decision not to present additional arguments or evidence at the resentencing hearing was not strategic. Defendant fails to show the minimal nature of defense counsel's participation at the resentencing hearing was presumptively prejudicial.

---

[11] Defense counsel's failure to object to defendant's allegedly disproportionate sentence is addressed in part I of the Discussion, *ante*.

## **DISPOSITION**

The judgment affirmed.  We direct the trial court to prepare an amended abstract of judgment reflecting the oral pronouncement at resentencing, which is seven years, plus 190 years to life, and forward a certified copy to the Department of Corrections and Rehabilitation.

HILL, P. J.

WE CONCUR:

MEEHAN, J.

FAIN, J.*

---

\*  Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26.